## COOK et al. v. PHILLIPS PETROLEUM CO.
### No. 11541.

Circuit Court of Appeals, Fifth Circuit.
Dec. 2, 1946.
Rehearing Denied Jan. 13, 1947.

S. A. Crowley, of Fort Worth, Tex., James Little, of Big Spring, Tex., and John J. Watts, of Odessa, Tex., for appellants.

R. S. Sutton, E. H. Foster, and R. S. Trippett, all of Amarillo, Tex., and R. B. F. Hummer, Don Emery, and R. L. Foster, all of Bartlesville, Okl., and James D. Willis, of Pecos, Tex., for appellee.

Before SIBLEY, HUTCHESON, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

Mrs. Elma E. Cook, in behalf of herself as widow of Clinton K. Cook, Sr., and in behalf of their minor children, sued Phillips Petroleum Company for the negligent killing of Cook. At the conclusion of her evidence a verdict was directed against her and she appeals from the consequent judgment.

The evidence shows that Cook was 53 years old and had worked in and around oil fields for over 20 years, and in the particular oil field in which he met his death for six years, and in the employ of Farmer & Company for six months. Farmer & Company were employed as independent contractors to swab out some oil wells by Phillips Petroleum Company, they furnishing their men and the equipment for the job. In the operation a swab was drawn up repeatedly through the well, forcing its contents out through a pipe into a temporary test tank belonging to Phillips, which stood 16 feet high, from which from time to time samples were taken by lowering a small vessel through an eight-inch hole in the top of the tank near its edge. An ordinary ladder, built by Farmer's men, was placed against the side of the tank, from which one could reach the hole or get upon the top of the tank. Cook had taken samples during the day, but at twilight, about 8 p. m., he went up the ladder for a sample, and fell to the ground, breaking several ribs and hurting his back and suffering in his respiratory functions. No one saw him fall, but he at once exclaimed that he fell from the tank. The top of the tank was greasy from oil spray, and there were some marks near the hole apparently made by a man's hand, and a mark on the side of the tank as though made by a shoe scraping down it. Cook was not found lying at the foot of the ladder but part way around the tank, which was only some 10 feet in diameter. He was taken to a hospital and died not many hours after. There were a number of witnesses who testified that the oil field was a sour gas field, that is, that poisonous hydrogen sulphide gas was often encountered, and that it was customary to wear a gas mask when doing work which would expose one to breathing it; and that in swabbing wells this was usually done, though men sometimes took samples without putting on a mask. Cook did not have one on. The contention as to negligence is that the work was inherently dangerous, and that Phillips was bound, notwithstanding the independent contract with Farmer, to have the premises safe, and to have the tank

 

clean on top so one would not slip or fall, and to have a rail around it or on the ladder, and to furnish a gas mask for protection against the gas risk.

The evidence of Mrs. Cook that Cook, over two hours after he fell, told her at the hospital in response to her question, that the gas hit him and that was all he knew, was rejected because Cook's statement was not res gestae, but the narrative of a past event. The opinions of two doctors, on hypothetical questions, that gas probably overcame Cook and caused his fall and death, were also rejected. We do not rule upon the errors assigned on these rulings, but pass upon the case as though the evidence were in and should be taken as showing that Cook was overcome by inhaling gas and this caused his death.

The case is controlled adversely to Mrs. Cook by the uncontradicted testimony of her first witness, Farmer's foreman under whom Cook was working, to the effect that Cook had been working with Farmer & Company for five or six months, and at this very well for one day previously; and seemed to be an experienced oil field man; that Farmer & Company had gas masks there in the yard for the use of the men, and all they had to do was to go there and get one, and he thought they so understood. Other witnesses make it plain that Cook was experienced, and that it was common knowledge that such gas was likely to be encountered and that it was usual to wear a mask. Cook plainly was taking a known risk in not wearing a gas mask which was at hand. He also knew the condition of the ladder, and of the top of the tank, for he had been up there before. There was indeed no need to get upon the domeshaped top, for the test hole could be reached from the ladder. There was nothing wrong with the ladder for temporary use. There was no hidden danger except the gas, and the work he was doing gave rise to that. We think the probability is that he was overcome by gas which the swabbing had forced into the tank, that he did not go upon the top of the tank, but fell sideways from the ladder, clutching at the tank with hand and foot.

But we agree with the trial judge that the jury could not properly find negligence on the part of Phillips Petroleum Co., the owner of the well and tank.

Judgment affirmed.